UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Empower Central Michigan, Inc.,   Case No. 23-31281-jda
                                  Chapter 11
             Debtor.              Hon. Joel D. Applebaum
_____/

# OPINION GRANTING IN PART DEBTOR'S MOTION TO REJECT EXECUTORY CONTRACTS

This matter came before the Court on the Motion to Reject Executory Contracts (the "Motion," Dkt. 82) filed by debtor Empower Central Michigan, Inc. ("Debtor" or "Empower"). Specifically, Debtor seeks to reject a Franchise Agreement and "several other related agreements" entered into with creditor Auto Lab Franchising, LLC ("Auto Lab").[1]

On April 3, 2024, after having reviewed the parties' initial and supplemental briefs, and having heard lengthy oral argument, the Court ruled from the bench, granting Debtor's Motion to Reject the Franchise Agreement, but finding that the non-compete clause in the Franchise Agreement remained enforceable post-rejection. The Court further ruled that the separate Confidentiality Agreement was

---

[1] While Debtor does not specifically identify the "other related agreements," the parties' briefs and oral arguments focused on the Franchise Agreement and a separate contract titled "Confidentiality and Nondisclosure Agreement and Covenant Not to Compete" (hereinafter "the Confidentiality Agreement" and, jointly with the Franchise Agreement, the "Agreements").

not an executory contract subject to rejection and, therefore, remained enforceable.[2] This written Opinion augments the Court's bench ruling.

## I. FACTUAL BACKGROUND

Auto-Lab Franchising, LLC is in the business of franchising Auto Lab Complete Car Care Centers throughout the mid-west. In late 2020, its Fenton, Michigan location, which had been in business for 15 years, was purchased by Empower.

On August 4, 2023, Debtor filed a chapter 11 (subchapter V) bankruptcy petition. Initially, Debtor anticipated reaffirming the Agreements and continuing to operate the Fenton location as an Auto-Lab franchise and filed a plan of reorganization to that effect. At some point thereafter, however, Debtor abruptly changed course and filed a Second Amended Plan of Reorganization. This amended plan sought to reject the Agreements, while allowing Debtor to continue to operate as an independent auto repair shop in the same location. (Dkt. 84). To that end, prior to any ruling on Debtor's Motion, Debtor began severing its franchise relationship with Auto Lab. Among other things, it repainted the interior space of

---

[2] The Confidentiality Agreement also bound Debtor's owner, Bradford Brokaw ("Brokaw"). During oral argument, Debtor acknowledged that even if the Confidentiality Agreement was rejected by Debtor, it would remain enforceable against Brokaw and prohibit him from operating a competing car care center within the time and mileage restrictions contained in the Confidentiality Agreement.

2

the Fenton location with an unauthorized color, stopped reporting sales to Auto Lab, posted a notice to customers that the franchise was ending and Debtor was changing its name to Fenton Car Care Center, and began copy customer lists and, possibly, other confidential intellectual property, all the while continuing to utilize Auto Lab's trademarks and other confidential and proprietary intellectual property. Debtor does not contest that its actions constituted a material breach of the Agreements.

Pursuant to the amended plan, on February 23, 2024, Debtor filed the Motion arguing that the Franchise Agreement no longer benefitted Debtor because the monthly franchise fee was Debtor's largest expense, and the Franchise Agreement provided no tangible benefit to Debtor. Pursuant to 11 U.S.C. § 365 and the business judgment rule, Debtor argued that rejection of the Agreements was warranted.

Auto Lab objected to the Motion, arguing that: (1) while the Franchise Agreement may be an executory contract, the covenant not to compete provision contained within is non-executory and cannot be rejected, and (2) Auto Lab has fully performed under the Confidentiality Agreement by providing all of its business practices, systems, trademarks, and other confidential intellectual property to Debtor at the inception of their relationship. Because Debtor has received the full benefit of the Confidentiality Agreement, and no material performance remains due from Auto Lab thereunder, the Confidentiality Agreement is not an executory contract and is not subject to rejection under Section 365 of the Bankruptcy Code.

3

In order to address the parties' arguments, the Court must look at the specific language of the Agreements.

A. **The Franchise Agreement**

On November 20, 2020, Auto Lab Franchising, LLC, as the Franchisor, and Empower Central Michigan, Inc., as the Franchise Owner, executed the Franchise Agreement. (Auto Lab's Motion for Relief from the Automatic Stay, Dkt. 81, Ex. 6-1). The Franchise Agreement includes the following provisions relevant to the present Motion:

. . .

14. **REASONS FOR TERMINATION OF THIS FRANCHISE**

. . .

14.3 **[Liquidated Damages]** Should this Agreement terminate due to a material breach by Franchise Owner, Franchise Owner shall pay to [Franchisor] for a period of four years (or the [remainder] of the Term of the Agreement if that period is less than four years) a continuing Royalty (as partial compensation for the future fees that would have been paid by the Franchise Owner under this Agreement) in an amount equal to the total Royalty due from Franchise Owner for the 52 weeks preceding the termination divided by 52. If the Franchise Store was open fewer than 52 weeks, then the average of all weeks for which the Franchise Store was open shall be used. Payment of the Royalty Payment to Franchisor shall be in addition to other amounts to which Franchisor is entitled to recover, including without limitation, attorney fees and other costs and expenses of collection. Payment of the Royalty shall not affect Franchisor's right to obtain appropriate injunctive relief and other remedies to enforce this Agreement.

. . .

## 17. <u>**NONCOMPETITION**</u>

In order to protect the Trademarks licensed hereby, Franchise Owner in his or her individual capacity or if a corporation or partnership, its respective stockholders, officers, directors, partners, agents and employees in such capacities as may be applicable, shall:

17.1 Neither be associated, directly or indirectly, as an employee, proprietor, partner, member, stockholder, officer, director, agent or otherwise in the operation of any similar to or competitive with Franchisor during the term of this Agreement no matter where such similar business may be located; nor be associated directly or indirectly, as an employee, proprietor, partner, member, stockholder, officer, director, agent or otherwise of a similar business for a period of two (2) years from termination or from the date of entry of a formal judgment enforcing this covenant by a court of competent jurisdiction, whichever is the later date.

The post-term covenant shall apply for the geographic area located within thirty (30) miles of the territorial boundaries of any Designated Area of any similar, existing business (as of the date of termination of this Agreement) to the business franchised hereby which is being operated by another franchise owner or by the Franchisor upon the termination of this Agreement (termination as used in this Article shall mean either expiration of this Agreement or severance of the franchise relationship pursuant to procedures set forth herein).

. . .

17.3 The non-competition covenants contained in this article and Non-disclosure Agreement may be reduced in scope by an arbitrator or court of competent jurisdiction in order to render them enforceable under the prevailing law in lieu of declaring such non-competition covenants unenforceable as written.

17.4 Franchise Owner also acknowledges and agrees that if Franchise Owner should violate the provisions of this Article with respect to the operation of a competing business following assignment, expiration or termination of this Agreement, then the period for which the prohibition stated therein shall be applicable shall be extended until 2 years following the date Franchise Owner ceases all activities that are in violation of such provision.

17.5 Franchise Owner agrees that the restrictions contained in this Article are reasonable and necessary in order to protect the business interests of Franchisor, which business interests the Franchise Owner acknowledges to be valuable and legitimate.

. . .

25. **MISCELLANEOUS**

. . .

25.11 Franchise owner has carefully considered the nature and extent of the restrictions upon Franchise Owner set forth in this Agreement (including without limitation, the covenants not to compete, confidentiality restrictions and the restrictions on assignment) and the rights and remedies conferred upon Franchise Owner and Franchisor under this Agreement. Such restrictions, rights and remedies: (a) are reasonable, including but not limited to, their term and geographic scope; (b) are designed to preclude competition which would be unfair to Franchisor and the Franchise System; (c) are fully required to protect Franchisor's legitimate business interests; and (d) do not confer benefits upon Franchisor that are disproportionate to Franchise Owner's detriment. The covenants not to compete set forth in this Agreement are fair and reasonable and will not impose any undue hardship on Franchise Owner, since Franchise Owner has other considerable skills, experience and education which afford Franchise Owner the opportunity to derive income from other endeavors.

B. **The Confidentiality Agreement**

In November, 2020, the parties also executed the Confidentiality Agreement. That agreement was executed between Empower as "Franchisee," Brokaw as owner of the equity interest in Franchisee, and Auto Lab. (Auto Lab's Motion to Lift Stay, (Dkt. 81, Ex. 6-2). Auto Lab required the Franchisee and Brokaw to sign the Confidentiality Agreement to induce Auto Lab to transfer confidential information

to Debtor. Many of the Agreement's provisions begin with "Owner agrees . . . "
Paragraph 6 of the Confidentiality Agreement sets forth the same time and place restrictions set forth in the Franchise Agreement's non-competition provisions.

Paragraph 7 of the Confidentiality Agreement addresses relief -- both equitable/injunctive relief and monetary damages -- resulting from a material breach of the Confidentiality Agreement. That paragraph states in full,

> Owner acknowledges that it will be difficult to measure accurately the damages to AUTO LAB from any breach of the covenants and restrictions set forth herein, that the injury to AUTO LAB from any such breach would be incalculable and irremediable and the damages would not, therefore in and of themselves, be an adequate remedy. Owner therefore agrees that in the event it shall breach or attempt to breach any of the terms of this Agreement, AUTO LAB shall be entitled as a matter of right to obtain from any court of competent jurisdiction an injunction (i) prohibiting Owner from any further breaches of this Agreement; (ii) rescinding any action taken by Owner contrary to the terms of this Agreement; and (iii) authorizing AUTO LAB to recover from Owner any and all salaries, fees, commissions, income profits or other remuneration or gain which Owner may have received or to which it may have become entitled to receive from or by reason of the conducting of any activity in violation of the terms, conditions or covenants of this Agreement. The issuance of such an injunction will not prevent AUTO LAB from obtaining such other relief as is appropriate under the circumstances, such as the award of other monetary damages.

Confidentiality Agreement, ¶ 7.

## II. ANALYSIS.

Section 365(a) of the Bankruptcy Code provides that a "trustee [or debtor], subject to the court's approval, may assume or reject any executory contract." 11

7

23-31281-jda    Doc 121    Filed 04/26/24    Entered 04/26/24 16:46:21    Page 7 of 15

U.S.C. § 365(a). A contract is executory if "performance remains due to some extent on both sides." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522, n.6 (1984)(internal quotation marks omitted). As recently explained by the United States Supreme Court,

> Such an agreement represents both an asset (the debtor's right to the counterparty's future performance) and a liability (the debtor's own obligations to perform). Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefitting from the counterparty's performance. But if not, the debtor will want to reject the contract, repudiating any further performance of its duties. The bankruptcy court will generally approve that choice, under the deferential "business judgment" rule. *Id.* at 523.

*Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1658 (2019). The Supreme Court went on to explain that,

> According to Section 365(g), 'the rejection of an executory contract [] constitutes a breach of such contract' . . . . [T]he counterparty thus has a claim against the estate for damages resulting from the debtor's non-performance. But such a claim is unlikely to ever be paid in full. That is because the debtor's breach is deemed to occur 'immediately before the date of filing of the [bankruptcy] petition,' rather than on the actual post-petition rejection date. § 365(g)(1). By thus giving the counterparty a pre-petition claim, Section 365(g)(1) places that party in the same boat as the debtor's unsecured creditors, who in a typical bankruptcy may receive only cents on the dollar.

*Id.* at 1658.

Consequently, in order to determine whether Debtor can reject its contracts with Auto Lab, this Court must first determine whether the Agreements are

executory. If the Agreements are not executory, section 365 of the Bankruptcy Code does not apply, and the Agreements are not subject to rejection. If, on the other hand, the Agreements are executory, Debtor may, within the bounds of the business judgment rule, reject them. Because rejection is deemed to be a pre-petition breach of the Agreements, the Court must then determine the nature of any damages arising from the breach. A breach giving rise to money damages is a claim in Debtor's bankruptcy. 11 U.S.C. § 101(5)(A). A breach giving rise to equitable relief (e.g., injunctive relief, specific performance, etc.) may or may not be a claim, depending on whether the right to equitable relief is "an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money." *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 497 (6th Cir. 2001). If, as Debtor argues here, the equitable relief is simply an alternative to a right of payment, then it is a monetary claim and equitable relief will be unavailable.

Auto Lab acknowledges that the Franchise Agreement is an executory contract. (Response to Debtor's Motion to Reject, Dkt. 90 at 3). *See In re Times Square JV LLC*, 648 B.R. 277, 284 (Bankr. S.D.N.Y. 2023) ("Franchise agreements are generally considered executory.") Nevertheless, Auto Lab asserts that the non-compete covenant embodied in the Franchise Agreement is non-executory and thus survives rejection. Moreover, Auto Lab asserts that, with respect to the Confidentiality Agreement, it completed performance of all its material obligations

when it provided Debtor with its trademarks, intellectual property, and other proprietary confidential information. Accordingly, because there are no material continuing obligations remaining, the Confidentiality Agreement cannot be considered executory.

For the reasons stated on the record, the Confidentiality Agreement is a separate non-executory agreement that it is not subject to rejection by the Debtor and, therefore, the confidentiality and non-competition terms of this agreement continue to bind the Debtor.³ The distinction between executory and non-executory contracts is not particularly important here because even were the Confidentiality Agreement a rejectable executory contract, the result is the same -- the equitable remedies contained in the Franchise Agreement and the Confidentiality Agreement cannot be reduced to a monetary claim and remain enforceable by Auto Lab.

The Bankruptcy Code defines a "claim" as "the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent,

---

³ Debtor argues that, because of an integration clause in the Franchise Agreement, the Franchise Agreement and the Confidentiality Agreement must be considered one unitary agreement. While it is true that both agreements are part and parcel of one transaction, paragraph 23.3 of the Franchise Agreement is not an integration clause. Rather, the boilerplate language simply provides that the Agreements contain all of the agreed upon terms and supersede other prior drafts, negotiations, etc.

10

23-31281-jda    Doc 121    Filed 04/26/24    Entered 04/26/24 16:46:21    Page 10 of 15

matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5)(B). As explained in *Collier on Bankruptcy*:

> The intended result is that a liquidation or estimation of a contingent right of payment for which there may be an alternative remedy makes the equitable claim dischargeable in bankruptcy. For example, in some states, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event the creditor entitled to specific performance would then have a "claim for the purpose of a case under title 11. . . .
>
> On the other hand, rights to an equitable remedy for breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" within the Code's contemplation and would not therefore be dischargeable in bankruptcy unless such obligations could be translated into a claim for damages if breached. When there is no money damage alternative to state court ordered equitable remedies such as resulting trust, partition in kind, or deed reformation, they do not fit the definition of claim under section 101(5) and, therefore are not subject to discharge under the Code. . . . **Most courts have concluded that a covenant not to compete, or at least the portion of such a contract giving a right to injunctive relief, is not a claim.**

2 *Collier on Bankruptcy* ¶ 101.05[5] (footnotes omitted, emphasis added).

The Sixth Circuit directly addressed the issue of whether a debtor's obligation not to compete constituted a claim in *Kennedy v. Medicap Pharms., Inc.*, 267 F.3d 493 (6th Cir. 2001). There, debtors were subject to a covenant not to compete that arose from a franchise agreement with Medicap Pharmacies. Medicap filed suit in Iowa state court seeking an injunction against the debtors to enforce the terms of the non-compete agreement. Before the state court issued a final ruling on the

23-31281-jda    Doc 121    Filed 04/26/24    Entered 04/26/24 16:46:21    Page 11 of 15

injunction, the debtors filed their bankruptcy petition. Medicap then filed an adversary proceeding objecting to discharge of the injunctive relief and seeking relief from the automatic stay on the grounds that the debtors' obligations under the injunction were nondischargeable. The bankruptcy court granted summary judgment in favor of Medicap and terminated the automatic stay so that Medicap could continue its suit for injunctive relief against the debtors in state court.

The Sixth Circuit affirmed, reasoning that because compliance with the injunction required only that the debtors cease violating the terms of the non-compete agreement going forward, Medicap's right to injunctive relief did not "equate to being a claim." *Id.* at 497. [4] *See also In re Udell*, 18 F.3d 403 (7th Cir. 1994)("[A] right to an equitable remedy for breach of performance is a 'claim' if the same breach also gives rise to a payment 'with respect to' the equitable remedy. If the right to payment is an 'alternative' to the right to an equitable remedy, the necessary relationship clearly exists, for the two remedies would be substitutes for

---

[4] Debtor cites *In re Kilpatrick*, 160 B.R. 560 (Bankr. E.D. Mich. 1993), a chapter 13 case which held that because money damages were available for a contempt violation under Michigan law, the right to enforce an injunction via contempt proceedings is a claim is subject to discharge. However, in *Kennedy*, the Sixth Circuit effectively overruled *Kilpatrick*. *See Kennedy*, 267 F.3d at 498, n. 1 ("Damages for contempt of an injunction, however, arise from a separate post-petition breach of performance, *i.e.,* breach of the injunction, not the pre-petition breach of the covenant not to compete. It would not, therefore, be a claim discharged in the bankruptcy. . . .")

12

23-31281-jda    Doc 121    Filed 04/26/24    Entered 04/26/24 16:46:21    Page 12 of 15

one another."); *MCS Acquisition Corp. v. Gilpin (In re Gilpin),* 391 B.R. 210 (6th BAP 2008)(reversing the bankruptcy court's holding that MCS's equitable rights under the covenant not to compete constituted a monetary claim and holding that "[c]ompliance with the relief sought by NCS would not require the payment of money by the Debtor. Rather, the Debtor would be required only to cease his alleged violation of the noncompetition agreement and the injunction granted in connection therewith").

Looking at the damage provisions in the instant Agreements, paragraph 14.3 of the Franchise Agreement provides for liquidated damages for a period of four years "as partial compensation for the future [Royalty] fees that would have been paid by the Franchise Owner under this Agreement." The amount of the payments is calculated as an amount equal to "the total Royalty due from the Franchise Owner for the 52 weeks preceding the termination divided by 52." That amount "shall be in addition to other amounts to which Franchisor is entitled to recover, including but not limited to attorney fees and other costs and expenses of collection. Payment of the Royalty shall not affect Franchisor's right to obtain appropriate injunctive relief and other remedies to enforce this Agreement."

The damages provision in the Confidentiality Agreement, paragraph 7, states that damages from breach of the Agreement "will be difficult to measure accurately" and "would be incalculable and irremediable and the damages would not, therefore

13

in and of themselves, be an adequate remedy." Thus, the Owner agrees that, in the event of a breach or attempt to breach, Auto Lab "shall be entitled as a matter of right to obtain. . . an injunction. . . prohibiting further breaches. . . ."

In reading these provisions, the Court must determine whether the Agreements intend to give rise to monetary claims, equitable relief, or both. The Court concludes that the answer is "both." The provision concerning damages for loss of royalties under the Franchise Agreement addresses Auto Lab's lost income stream as a result of the rejection of the Franchise Agreement. Undeniably, this is a monetary claim under 11 U.S.C. § 101(5)(A). But the Franchise Agreement also provides that "[p]ayment of the Royalty shall not affect Franchisor's right to obtain appropriate injunctive relief and other remedies to enforce this Agreement." Franchise Agreement, ¶ 14.3. As Auto Lab made clear in its briefs and oral argument, and this Court agrees, this language, coupled with the extensive confidentiality and non-compete provisions in the Agreements, is intended to protect Auto Lab's trademarks, other confidential proprietary intellectual property throughout all of its franchises, and the customer goodwill built up at the Fenton, Michigan location over the last almost 20 years. These protections are entirely distinct from protections surrounding the stream of royalty payments. *But cf. Aire Serv LLC v. Roberts (In re Roberts)*, 607 B.R. 635 (Bankr. N.D. Ill. 2019) (holding similar provision concerning loss of royalties was an alternative to covenant not to

compete, thereby rendering covenant not to compete unenforceable).  While a monetary claim based upon the liquidated damages formula may compensate for lost royalty payments, this provision does not (nor was it intended to) protect Auto Lab's trademarks, confidential intellectual property and customer goodwill.  Accordingly, the equitable relief at issue in this case is not simply an alternative to a right of payment and, therefore, cannot be reduced to a monetary claim under 11 U.S.C. § 101(5)(B).

### III.  CONCLUSION

For the reasons stated herein and on the record at the conclusion of the hearing held on April 3, 2024, Debtor's Motion to Reject Executory Contracts (Dkt. 82) is GRANTED.  The non-compete clause in the Franchise Agreement remains enforceable post-rejection.  Moreover, the separate Confidentiality Agreement is not an executory contract subject to rejection and, therefore, that agreement also remains enforceable.  An Order consistent with this Opinion was previously entered on April 12, 2024 (Dkt. 119).

**Signed on April 26, 2024**



/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**