UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

IN RE:

EMPOWER CENTRAL MICHIGAN, INC.               Case No. 23-31281
                                             Chapter 11 proceeding
                                             Subchapter V

                    Debtor.
                                             Judge: Joel D. Applebaum

_____/

**THIRD AMENDED PLAN OF REORGANIZATION FOR DEBTOR
UNDER SUBCHAPTER V OF CHAPTER 11
OF THE BANKRUPTCY CODE**

Empower Central Michigan, Inc., Debtor and Debtor in Possession in the above captioned case, (hereinafter "Debtor"), by and through its counsel, Winegarden, Haley, Lindholm, Tucker, and Himelhoch, P.L.C. ("WHLTH") hereby submits its *Third Amended Plan of Reorganization for Debtor Under Subchapter V of Chapter 11 of the Bankruptcy Code* (the "Plan") as follows:

**ARTICLE I
DEFINITIONS, RULES OF
INTERPRETATION AND COMPUTATION OF TIME**

**1.1     Scope of Definitions.**

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in Section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.2     Definitions.**

1.2.1     "**Administrative Claim**" means certain Claims for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) and (3) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, any actual indebtedness or obligations incurred or assumed by the Debtor during the pendency of this Chapter 11 Case in connection with conducting the Debtor's businesses, any actual expenses necessary or appropriate to facilitate or effectuate the Plan, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Section 546(c) of

1

the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of any Allowed Secured Claim is entitled to priority under Sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise.

1.2.2 "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date, except as otherwise specifically set forth in the Plan or a Final Order.

1.2.3 "**Administrative Claims Objection Bar Date**" means the deadline for filing objections to requests of payment of Allowed Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is one hundred eighty (180) days following the Effective Date; provided that the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

1.2.4 "**Affiliates**" has the meaning given it by Section 101(2) of the Bankruptcy Code.

1.2.5 "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class.

1.2.6 "**Allowed Claim**" means a Claim or any portion of the Claim

a. that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

b. as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

c. as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

d. that is expressly Allowed in a liquidated amount in this Plan.

1.2.7 "**Allowed Class . . . Claim**" or "**Allowed Class ... Interest**" means an Allowed Claim or an Allowed Interest in the specified Class.

1.2.8 "**Allowed Interest**" means an ownership Interest in any Debtor, which has been listed by such Debtor in its Schedules and related documents as liquidated in an amount and not disputed or contingent; provided however, that proofs of Interest need not be Filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that Debtor, in its

discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

1.2.9 "**Avoidance Claims**" means Causes of Action or defenses arising under any of Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute the Causes of Action, including, but not limited to, any claims of any Affiliates and Insiders.

1.2.10 "**Ballot**" means the official bankruptcy form 314 adopted for this Chapter 11 Case or a document prepared to substantially conform to same which is distributed with the Plan to Holders of Claims and Interests in connection with the solicitation of votes for or against the Plan.

1.2.11 "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. §§ 101, et. seq.), as in effect on the Petition Date or as may be amended (to the extent any such amendments are made applicable to the Chapter 11 Case.

1.2.12 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.13 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.14 "**Bar Date**" means the deadlines set, or to be set, if any, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case, or otherwise asserting any Claim against any Debtor, or, if no such deadline is set, as provided for by the Bankruptcy Rules.

1.2.15 "**Beneficiaries**" means all Creditors of the Debtor with Claims treated under Articles III or IV of this Plan.

1.2.16 "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.17 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.18 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, claims, and rights of appeal, whether known, unknown, pending, not pending, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertible directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by Debtor to the extent the Cause of Action

3

is a Cause of Action held by the Debtor, including, but not limited to, any claims against any Affiliates and Insiders.

1.2.19 "**Chapter 11 Case**" or "**Case**" means this Subchapter V of Chapter 11 case (Case No. 23-31281-jda) currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.20 "**Claim**" means a claim against Debtor, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.21 "**Claimant**" means any individual or entity which has a valid Claim as defined herein.

1.2.22 "**Class**" means a category of Holders of Claims or Interests as described in Article IV of this Plan.

1.2.23 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.24 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.25 "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and related matters, as may be adjourned or continued from time to time.

1.2.26 "**Confirmation Objection Deadline**" means the deadline set for filing objections to confirmation of the Plan. Presently, the Confirmation Objection Deadline is August 14, 2024, as set forth in the Court's *Order Establishing Confirmation Related Deadlines* [Docket No. 124], unless said deadline is modified by the Bankruptcy Court.

1.2.27 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under Section 1191 of the Bankruptcy Code.

1.2.28 "**Creditor**" means any creditor of Debtor, as defined in Section 101(10) of the Bankruptcy Code.

1.2.29 "**Cure Claim**" means the Claim of a party to an executory contract with Debtor whose contract has been assumed by the Debtor for any amount which may be required to cure a pre-petition default.

1.2.30 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed

4

timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.31 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.32 "**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order.

1.2.33 "**Empower**" means the Debtor Empower Central Michigan, Inc., a Michigan corporation.

1.2.34 "**Entity**" has the meaning set forth at Section 101(15) of the Bankruptcy Code.

1.2.35 "**Estate**" means the bankruptcy estate of Debtor created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.2.36 "**Exhibit**" means any exhibit or schedule attached to this Plan or incorporated by reference to the Plan, including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan.

1.2.37 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.38 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.39 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for re-argument or further review or rehearing has been or can be taken or granted.

1.2.40 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.2.41 "**Governmental Unit**" has the meaning set forth at Section 101(27) of the Bankruptcy Code.

5

1.2.42 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.43 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.2.44 "**Insider**" has the meaning set forth at Section 101(31) of the Bankruptcy Code.

1.2.45 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in the Debtor.

1.2.46 "**Interest Rate**" means, with respect to Claims entitled to interest under the Bankruptcy Code and this Plan, the interest being paid or earned on a five-year Treasury Note as published by the Wall Street Journal on the Effective Date, or such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.47 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.48 "**IRS**" means the Internal Revenue Service.

1.2.49 "**Lien**" has the meaning set forth at Section 101(37) of the Bankruptcy Code.

1.2.50 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.51 "**Petition Date**" means August 4, 2023, the date Debtor filed its petition for relief in the Bankruptcy Court commencing the Chapter 11 Case.

1.2.52 "**Plan**" means this plan for the resolution of outstanding Claims and Interests in the Chapter 11 Case, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.53 "**Plan Proponent**" means the Debtor.

1.2.54 "**Priority Claim**" means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code.

1.2.55 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.2.56 "**Proof of Claim**" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

6

1.2.57 "**Property of the Estate**" has the meaning set forth in Sections 541 and 1186 of the Bankruptcy Code.

1.2.58 "**Pro Rata**" means with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise in such Class or Classes.

1.2.59 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to Sections 327 of the Bankruptcy Code or otherwise, and the Subchapter V Trustee.

1.2.60 "**Professional Fee Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.61 "**Projected Disposable Income**" means the Debtor's projected disposable income for the first five (5) years after the Effective Date, which, as demonstrated in the financial projections attached as **Exhibit B**, totals $24,697.00.

1.2.62 "**Reorganized Debtor**" means the Debtor from and after the Effective Date.

1.2.63 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which the Debtor or the Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought before the Effective Date or identified in the Schedules or Disclosure Statement, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the date of this Plan.

1.2.64 "**Scheduled**" means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

1.2.65 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by the Debtor.

1.2.66 "**Secured Claim**" means a Claim secured by a security interest in or a lien on property in which a Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to Section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by a Debtor and the Holder of such Claim.

1.2.67 "**Security**" has the meaning set forth at Section 101(49) of the Bankruptcy Code.

1.2.68 "**Subchapter V**" refers to Sections 181 through 1195 of the Bankruptcy Code.

1.2.69 "**Subchapter V Trustee**" means Deborah Fish, the trustee appointed in the Chapter 11 Case pursuant to Section 1183 of the Bankruptcy Code.

1.2.70 "**Unimpaired**" means, with respect to a Claim or class of Claims, any Claim treated under this Plan that leaves unaltered the legal, equitable, and contractual rights of such Claim.

1.2.71 "**Unsecured Claim**" means a Claim that is neither a Secured Claim, Administrative Claim, or Priority Claim.

1.2.72 "**Voting Deadline**" means the deadline set for the receipt of Ballots by Debtor or Debtor's agent as set by the Bankruptcy Court. Presently, the Voting Deadline is August 14, 2024, as set forth in the Court's *Order Establishing Confirmation Related Deadlines* [Docket No. 124], unless said deadline is modified by Order of the Bankruptcy Court.

**1.3** **Rules Of Interpretation:** For purposes of this Plan, unless otherwise provided herein:

1.3.1 Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural.

1.3.2 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine and neuter.

1.3.3 Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be amended, modified or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan for all purposes.

1.3.4 Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to a Debtor includes the Reorganized Debtor for all periods after the Effective Date.

1.3.5 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially on such terms and conditions.

1.3.6 The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.7 Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this

8

Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan, without giving effect to it conflict of laws principles.

        1.3.8   The rules of construction in Section 102 of the Bankruptcy Code apply.

**1.4**     **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or a deadline expires on a specific date, if the date falls on a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the deadline will expire, on the next day that is not a Saturday, Sunday or legal holiday.

**1.5**     **References to Monetary Figures**. All references in this Plan to monetary figures refer to currency of the United States of America.

**1.6**     **Exhibits**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor's counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.** The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

**1.7**     **No Admissions; Estimates of Claims**. Unless expressly stated otherwise, nothing herein will be deemed to be an admission by the Debtor or to otherwise prejudice Debtor in any Claim objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan and Exhibits are current estimates only. All Claim amounts and classifications remain subject to the Claim objection process as set forth in Article VIII.

**ARTICLE II**

**BACKGROUND**

**2.1**     **Description and History of the Debtor's Businesses.**

The Debtor operates an automotive repair facility in Fenton, Michigan. The Debtor is a franchisee of Auto-Lab Franchising, LLC. As a result of this franchise agreement and the advertising associated with it, the Debtor is better known as Auto-Lab of Fenton. The Debtor's address is 6500 Silver Pkwy Suite C, Fenton, MI 48430. There the Debtor and its seven employees perform work on vehicles of all makes and models. In addition to consumer owned vehicles, the Debtor is fortunate enough to perform work on several vehicle fleets, with fleet work providing regular and recurring business for the Debtor.

9

The Debtor has made considerable changes operationally since the Petition Date. The Debtor's principal Bradford Brokaw was originally on site managing the business and supervising operations nearly every day. He is the is the sole shareholder of the Debtor and he will remain the sole owner after confirmation of the Plan. Mr. Brokaw has recently delegated some of the management aspects of his role in order to eliminate the cost of his salary. Mr. Brokaw's delegation placed Mike Radloff, who has considerable experience in the automotive repair business, at the front line making the day to day decisions for the Debtor. This decision to delegate has been successful. The overall salary cost to the Debtor has decreased, and the Debtor benefits from Mr. Radloff's knowledge each day. Mr. Radloff reports to Mr. Brokaw, who continues to make all non-routine decisions for the Debtor. Mr. Brokaw will retain his ownership interest in the company under the Plan and he will continue to supervise the business in all respects.

**2.2.**     **Events Leading to the Filing of these Cases.**

Mr. Brokaw purchased the business from its existing owner operators in November of 2020. As would become clear over the months and years that followed, the value of the equipment purchased in connection with the transaction was massively overstated in the documents and appraisals prepared in connection with the acquisition. As a result of the appraisal, Mr. Brokaw expected one thing, but received something entirely different. It quickly became apparent that equipment and machinery was in much worse shape than expected. Repairs and replacements became necessary much sooner than anticipated. This, coupled with Mr. Brokaw's relative inexperience in the area of automotive repair, led to a rough initial period for the company after the acquisition. Additionally, the lingering effects of the COVID-19 pandemic further affected operations.

As a result of these early issues, the Debtor fell behind on its tax payments. Obligations are owed both to the IRS and to the State of Michigan for unpaid taxes. The accumulation of this debt began to really weigh on the Debtor just as things began to get better operationally. The primary purpose of this Plan is to resolve the debt owed to taxing authorities.

Mr. Brokaw has learned a great deal during his trial by fire. He is now armed with the experience necessary to turn the business around. Importantly, the machinery and equipment issues have all been resolved, leaving the Debtor with tools and equipment which will serve it well during the term of this Plan and, ideally, well beyond. The Debtor's Post Petition operational changes have further improved the status of the business. Once the tax obligations are put behind the Debtor by operation of this Plan, the Debtor believes that its future is bright.

**2.3**     **Events of Significance Since Filing Chapter 11.**

2.3.1.   Business Activities. The Debtor has continued to operate normally post-petition. Unfortunately, the Debtor experienced a problem with a newly hired employee which has caused some recent issues. The technician's employment has been terminated, however harm was caused to the business as a result of warranty claims arising from his poor performance. The Debtor expects that most of the impact of this disruption manifested itself during the month of October. The Debtor also experienced some issues with its payroll provider post-petition. As a result, the Debtor

issued checks for some payroll payments. The issue has been corrected and the Debtor is now utilizing ADP for all payroll which will eliminate any additional post-petition tax liability. Outside of these issues, which have now been resolved, the Debtor's operations have been smooth and as expected.

2.3.2. <u>Motion to Assume</u>. The Debtor filed a motion to assume the lease of the real property upon which its business operations occur. The motion was granted without objection on October 16, 2023. Docket No. 35.

2.3.3. <u>Elimination of Entertainment Expenses</u>. The Debtor previously expended significant sums in connection with entertainment expenses. As part of the Debtor's reorganization, these expenses have been eliminated. Some of these vendors continued to draw monies from the Debtor's account even though authorization was revoked pre or post-petition by the Debtor's principal. The Debtor reserves all Causes of Action it may have relative to the amounts withdrawn. Importantly, the Debtor believes that all of these expenses have now been completely eliminated.

2.3.4. <u>Motion to Reject.</u> As part of the previously mentioned effort to eliminate entertainment expenses, the Debtor filed a Motion to Reject its contract with Olympia Entertainment Events Center, LLC. The Debtor's motion was granted without objection on October 16, 2023. Docket No. 36.

2.3.5. <u>Franchise Matters</u>. A considerable portion of the time this case has been pending was occupied by a dispute between the Debtor and Autolab Franchising, LLC. The dispute is well documented in the Court records. Considerable ink could be spent here describing the dispute and the outcome, but the important point to be made is that the Debtor and Autolab Franchising, LLC have been working together to keep the Debtor's location open. Since the Court ruled the Debtor and Autolab Franchising, LLC have worked closely together to improve the Debtor's business. Both parties have had input in the financial information used for preparation of this Plan. This cooperation has caused Mr. Brokaw to be more confident in the Debtor's Plan, and. this Plan is proposed to turn that confidence into the Debtor's new reality.

**2.4.     <u>Assets and Liabilities</u>.**

2.4.1.     <u>Liquidation Analysis</u>

Debtor's liquidation analysis is attached as **<u>Exhibit A</u>**.

2.4.2.     <u>Risks, conditions and assumptions regarding the stated values.</u>

a.     All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to Debtor. The estimates have not been audited and a formal appraisal has not been performed. Cash on hand will change as the Debtor continues to operate until Confirmation. All valuations are necessarily estimates and actual results may result in higher or lower recoveries.

11

b.      Unless otherwise noted, Debtor has used the liabilities set forth in the Proofs of Claims and Schedules. These amounts are subject to adjustment and objections by Debtor.

c.      Costs of liquidation are estimates.

d.      The estimates and values shall not be construed to constitute binding guaranties, representations, or admissions and they are not warrantied in any way. They are subject to revision at any time.

e.      Although, as set forth herein, the Debtor has not engaged in an extensive analysis of such Causes of Action, the Debtor has drawn several conclusions which are reflected in the Liquidation Analysis and herein. First, the Debtor has concluded that it is unlikely that that it will recover in connection with the Causes of Action it may hold against insiders. Mr. Brokaw did not receive a salary from the Debtor until just prior to the petition date, limiting amounts which would be recoverable. Instead of salary, Mr. Brokaw received benefits in the form of tickets and memberships paid for by the Debtor. These benefits were also utilized for company purposes at the time. As set forth above, these expenses are being eliminated in the Debtor's reorganization. Additionally, Mr. and Mrs. Brokaw have filed for bankruptcy protection themselves, with their discharge precluding collection. As a result, the Debtor will not pursue Causes of Action against insiders.

Second, the Debtor has concluded that Avoidance Claims with respect to trade creditors are of no value. None of the Debtor's payments to trade creditors and service providers aggregated more than $7,575 during the 90 days preceding the Petition Date. Further, with respect to ordinary trade creditors and service providers, the Debtor believes that recipients of funds which could be recoverable in connection with Avoidance Claims would have defenses that would make significant recovery unlikely. The Debtor does not intend to pursue Avoidance Claims against trade creditors and service providers because recovery is believed to be unlikely and, perhaps more importantly, the Debtor has struggled to find alternative sources for supplies and services. The Debtor believes that pursuit of Avoidance Claims against trade creditors and service providers would do more harm than good as the Debtor believes that it would lose its source of necessary materials and services if these Avoidance Claims were pursued.

In addition to trade creditor and insider payments discussed above, during the 90 days preceding the Petition Date $27,939.00 was paid to MTCO, LLC, the Debtor's landlord, $12,000.00 was paid to Capital National Bank, and $30,584.13 was paid to Auto-Lab Franchising, LLC. The Debtor believes these creditors have defenses which would defeat any Avoidance Action and has concluded that these claims have no value. More specifically, the payments to Capital National Bank were payments on secured debt in the ordinary course of business and the payments to MTCO, LLC and Auto-Lab Franchising, LLC were payments made in connection with executory contracts in the ordinary course of business, with the Debtor to assume these executory contracts or replace them with a new agreement with the creditor. The Debtor does not intend to pursue Avoidance Claims against these creditors.

The Debtor paid $2,500.00 to a creditor Ivy Receivables, LLC during the 90 days preceding the Petition Date. This creditor does not have the defenses that the Debtor believes its trade creditors

12

have. However, the Debtor does not at this time intend to pursue this claim because it believes that the cost of pursuing the claim will exceed its value.

Although the Debtor does not at this time intend to pursue Avoidance Claims should this change, the Debtor will share with creditors the proceeds of any retained Avoidance Claims. Under this Plan the Debtor will distribute 50% of the net proceeds obtained from Avoidance Claims Pro Rata to unsecured creditors. All costs and expenses of litigation shall be deducted first from the gross Avoidance Action proceeds in order to arrive at the net amount.

       f.     The cessation of Debtor's business in a liquidation is likely to trigger certain claims which would not otherwise exist under the proposed Plan. Examples of such claims include, but are not limited to, tax liabilities, employee claims, claims related to additional rejection of executory contracts, and litigation claims. While some of these claims could be significant, no adjustment has been made for these potential claims unless specified in the Liquidation Analysis.

       g.     The Liquidation Analysis assumes that the party conducting the liquidation will attempt to sell assets as quickly as possible. Adjustments to the value of certain assets have been made to account for this.

       h.     The Liquidation Analysis assumes that a hypothetical Chapter 7 Trustee will retain professionals to perform certain duties in connection with the case. It is assumed that existing professionals would be replaced with new professionals.

### 2.4.3   Debtor's Conclusions

As shown in Exhibit A and herein, the Debtor believes that a liquidation of the Debtor's assets under Chapter 7 of the bankruptcy code would result in a significant reduction in the value to be realized by constituents as compared to the distributions contemplated under the Plan. Indeed, it appears clear that unsecured creditors would receive nothing from a liquidation. With the Debtor's secured creditor consuming the vast majority of the liquidation proceeds, the cost of administration of a Chapter 7 estate and the related attorney fees would likely consume most if not all of the proceeds of Avoidance Claims. Accordingly, the Debtor believes that confirmation of the Plan will provide a significantly greater return as compared to a liquidation.

### 2.5.   **Ability to make future plan payments and operate without further reorganization.**

<u>Funds from Operations</u>. The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit B.**

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) of $24,697.00.

13

The final Plan payment is expected to be paid on or about August 1, 2029.

**2.6.** **Identification of all potential avoidance actions and causes of action, including against insiders.**

The Debtor has not undertaken an analysis of what Causes of Acton it may have under Chapter 5 of the Bankruptcy Code and the potential defenses thereto, and cannot make any representations as to their value. However, the Debtors have filed detailed schedules and statements of financial affairs that disclose the Debtors' relevant pre-petition transfers. With respect to Mr. Brokaw specifically, those documents reflect payments to or for his benefit (in part) in the amount of $49,966.48 during the year preceding the Petition Date. The Debtor's general conclusions and plan of action with respect to Chapter 5 claims is set forth above.

The Debtor reserves the right to collect all accounts receivable and all other amounts due to Debtor for any reason whatsoever (whether owed to Debtor pursuant to contract rights, quasi contract, tort law, refund rights, deposits, or for any other reason). The Debtor reserves all setoff and recoupment rights of all kinds. The Debtor reserves the right to commence avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550 (the "Avoidance Claims"). Accordingly, the Debtor may have potential causes of action and reserves its right to bring a lawsuit against any Entity listed on Debtor's Schedules (as filed with the Bankruptcy Court) as owing a debt to the Debtor, and any Entity listed on its Statement of Financial Affairs (as filed with the Bankruptcy Court) as having received a transfer from the Debtor. More specifically, and without waiving any other claim, the Debtor may seek to avoid from any direct or indirect transferee, (i) under § 547 of the Code, any transfer of an interest of the Debtor in property which occurred within 90 days of the Petition Date, or, for insiders of the Debtor, within one year of the Petition Date; (ii) under § 544(a) and 545, any liens asserted against the Debtor, (iii) under §§ 544(b) and 548, any actual or constructive fraudulent transfers or obligations, and (iv) under § 549, any unauthorized post-petition transactions.

In addition, the Debtor reserves the right to collect and pursue all Causes of Action arising before or after the Petition Date against any and all Persons with which the Debtor has or had contractual, trade or account relations, including all Causes of Action relating to breaches of contract, collection of accounts receivable, breach of warranties or representations, supply of non-conforming or deficient goods or services, overpayments, credits, setoffs, demands for turnover of property, and any other Causes of Action that the Debtor may have arising under applicable state or federal law of any nature whatsoever. Further, the Debtor reserves the right to collect and pursue all Causes of Action arising before or after the Petition Date against any and all Persons who may have owed a duty to Debtor, breached a contract with the Debtor, or who may be liable to Debtor under applicable state or federal law of any nature whatsoever as a direct or indirect result of the Persons' actions which interfered with Debtor's business activities.

The Debtor does not limit the scope of the Causes of Action it retains. Debtor under the Plan and the Reorganized Debtor retains discretion to litigate, settle or abandon any Causes of Action, including Avoidance Claims.

**2.7.** **Anticipated administrative claims and priority claims.**

14

The Claims listed herein are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserves the right to contest the amount of any Claim, or the priority or extent thereof.

It is impossible to estimate administrative expenses with perfect accuracy as of the date of filing the Plan as such estimate depends on various unknown factors, including the total duration of the Chapter 11 Case and the nature and extent of additional administrative expenses, including professional expenses.

The Debtor anticipates the following Administrative Claims. The Debtor reserves the right to contest the amount and priority of any other Administrative Claim filed in this Chapter 11 Case and nothing in the Plan shall be deemed an admission by the Debtor.

| Claimant | Estimated Amount | Priority/Administrative |
|---|---|---|
| Winegarden, Haley, Lindholm, Tucker, and Himelhoch P.C. | $80,000.00 | Administrative |
| Deborah Fish | $25,000.00 | Administrative |
| Cintas | $307.42 | Administrative |

As of the date of filing the Plan, the Debtor is aware of the following Priority Claims. The Debtor reserves the right to contest the amount and priority of any other Priority Claim filed in this Chapter 11 Case and nothing in the Plan shall be deemed an admission by the Debtor.

| Claimant | Amount Claimed | Priority/Administrative |
|---|---|---|
| Department of Treasury – Internal Revenue Services | $22,149.72 | Priority |
| State of Michigan | $ 129,635.24 | Priority |

### 2.8. Total of all non-priority unsecured claims, including undersecured claims.

Attached as **Exhibit C** is a summary of all known unsecured claims.

The Claims listed therein are for description purposes only and not an admission by the Debtor or any other person. The Debtor reserves the right to contest the amount, classification, and priority of any Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof. Nothing in the Plan shall be deemed an admission by the Debtor. Further information on Claims can be found by accessing the claims register on the Bankruptcy Court's website.

### 2.9. Information regarding guaranteed debt or persons co-liable with Debtor on any debt.

Debtor's Schedules set forth, on Schedule H of each set of Schedules, all co-debtor obligations and liabilities. The Debtor reserves the right to contest the amount of any Claim, and if applicable, any asserted security interest or Lien, or the priority or extent thereof.

15

**2.10.** **Plan Summary**

This Plan proposes to pay Creditors of the Debtor from the Debtor's cash flow from operations and future income.

All Creditors and Equity holders should refer to Article III and IV for information regarding the precise treatment of their Claim.

**ARTICLE III**
**CLAIMANTS THAT ARE NOT SUBJECT TO CLASSIFICATION**
**AND ARE NOT ENTITLED TO VOTE ON THE PLAN:**
**ADMINISTRATIVE AND PRIORITY CLAIMS**

**3.1** **Administrative Claims**

Known administrative claims in this case are held by the Subchapter V Trustee, Cintas, and the attorney for the Debtor. The claims of the Debtor's attorney and the Subchapter V Trustee are also Professional Fee Claims, as defined below. The treatment of Professional Fee Claims is discussed below. Although there are no other known Administrative Claims in this Chapter 11 Case, the process by which any Administrative Claim must be asserted against the Debtor is set forth below.

**3.2** **Expenses of Operations**

Expenses of Operations include all liabilities based on the ordinary course of business after the Petition Date, and Claims allowed pursuant to Section 503(b) of the Bankruptcy Code, including applicable tax claims.

3.2.1   Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, to the extent any Allowed Administrative Claim has not already been paid in full or otherwise satisfied during this Chapter 11 Case, each Holder of an Allowed Administrative Claim will (i) be paid in four (4) equal monthly installments, with the first payment due sixty (60) days after the Effective Date, and the following three (3) installment payments due on the same date of each month thereafter, or (ii) if the Allowed Administrative Claim is based on liabilities incurred by the Estate  in the ordinary course of business after the Petition Date, it will be paid pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without further action by the Holder of such Allowed Administrative Claim.

3.2.2   Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided herein, unless previously filed, requests for payment of Allowed Administrative Claims, except for any Professional Fee Claims against the Reorganized Debtor, must be filed and served on the Debtor on or before the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the Notice of Entry of the Confirmation Order.  Holders of Allowed Administrative Claims that are required to file and serve a request for payment of such Allowed Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such

16

Claims against the Debtor or its property, and such Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the requesting party by the Administrative Claims Objection Bar Date.

### 3.3    Professional Fee Claims.

The holders of Professional Fee Claims shall consist of, without limitation, the Professional Fee Claims, if and when allowed, and may include, without limitation (i) Winegarden, Haley, Lindholm, Tucker, and Himelhoch's fees and costs, (ii) the Subchapter V Trustee's fees and costs.

3.3.1  **Final Fee Applications.** All final requests for payment of Professional Claims must be Filed no later than thirty (30) days after the Confirmation Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims and expenses will be determined by the Bankruptcy Court and paid (i) from funds held in trust by any Professional, or (ii) by way of a monthly Pro-Rata distribution. The amount of the Pro-Rata distribution shall be calculated by dividing the amount designated for legal fees in the Exhibit B projections for each calendar year by 12 to arrive at the monthly distribution amount for that year.

3.3.2  **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor shall employ and pay Professionals in the ordinary course of business.

### 3.4    Priority Tax Claims.

Priority Tax Claims consist of the Claims or portions of Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

3.4.1   As discussed herein, the Debtor has no equity in its assets. As such, the holders of Priority Tax Claims shall not be paid interest. The Holders of the claims identified in this subparagraph and any additional Priority Tax Claims which may be filed shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, payment in cash of the outstanding amount of the Allowed Priority Tax Claim in sixty (60) equal monthly payments, with the first payment commencing fifteen (15) days after the Effective Date and subsequent payments made on the same date of each month of the sixty months thereafter. If a Priority Tax Claim is filed or becomes Allowed after the Effective Date, the total number of payments to the Holder of that claim shall be reduced so that the Allowed portion of the claim is paid during the term of the Plan. For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. Section 507(a) that have been assessed prior to the Petition Date are subject to this Section 3.4.

3.4.2   Debtor reserves the right to continue or commence a challenge to any Priority Tax Claim through the claims objection process set forth in this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which

forms the basis for any assessment of taxes, and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to the assessment of Debtor's personal property that may or may not have been made by the respective taxing authority.

3.4.3    The Priority Tax Claim of the Internal Revenue Service, as currently filed or as later amended, shall be paid in full with statutory interest (currently at 8%), in equal monthly payments, beginning on the Effective Date and continuing through reorganization. Notwithstanding any provision of the Plan, there shall be no requirement that the Internal Revenue Service file any request for payment of Administrative Expenses, nor any deadline for the filing of such requests. Nor shall the failure to pay such liabilities result in a discharge, injunction, exculpation, release or in any other manner defeat the United States' right or ability to collect such liability pursuant to the requirements of Title 26. Upon failure of the Debtor to make any payment due on any administrative, secured, priority, or general unsecured claim of the Internal Revenue Service, or to file any return which comes due after the Confirmation Date, which failure is not cured within 30 days of the mailing of a written notice of default by the Internal Revenue Service, the Internal Revenue Service may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire unpaid claim and/or seek appropriate relief from this Court. Section 7.3 of the Plan shall not apply to distributions made by the Debtor to the Internal Revenue Service. If the Debtor withholds distributions which would be owed to the Internal Revenue Service under the Plan as a result of a claims objection filed by the Debtor, the Debtor shall escrow the withheld payments pending resolution of the objection notwithstanding Article VIII, Section 8.4 of the Plan. The disposition of escrowed funds shall be as set forth in the order resolving the claims objection.

**3.5**    **Substantial Contribution Compensation and Expenses Bar Date.** Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Sections 503(b)(3) ,(4), and (5) of the Bankruptcy Code must File an application with the clerk of the Bankruptcy Court on or before the Administrative Claims Filing Date and serve such application on counsel for Debtor and other parties as may be directed by the Bankruptcy Court on or before such date, or be forever barred from seeking such compensation or expense reimbursement. The Court will determine any timely filed request for compensation or expense reimbursement made under this Section 3.5, and Debtor shall pay any Allowed amount in sixty (60) equal monthly installments, with the first payment commencing fifteen (15) days after the Effective Date, and the following installment payments due on the same date of each month thereafter, unless otherwise agreed to in writing by Debtor and the claimant. If a Substantial Contribution Compensation and Expense claim is filed or becomes Allowed after the Effective Date, the total number of payments to the Holder of that claim shall be reduced so that the Allowed portion of the claim is paid during the term of the Plan.

**3.6**    **Other Administrative Claims**. All other requests for payment of an Administrative Claim (other than as set forth in Section 3.5 of this Plan) must be Filed and served on Debtor's counsel by the Administrative Claims Filing Date, except that any Administrative Claim not already Filed and required to have been Filed before the Administrative Claims Bar Date is automatically disallowed. Any request for payment of an Administrative Claim pursuant to this Section 3.6 that is not timely Filed and served is automatically disallowed without the need for any objection by Debtor. After the Effective Date, Debtor may settle an Administrative Claim without further Bankruptcy Court approval. Unless the Debtor objects to an Administrative Claim by the Administrative Claims Objection Bar Date (unless such objection period is extended by the

18

Bankruptcy Court), the Administrative Claim will be deemed Allowed in the amount requested. In the event that a Debtor objects to an Administrative Claim, the Bankruptcy Court will determine the Allowed amount of the Administrative Claim.

## ARTICLE IV
## SPECIFICATION OF TREATMENT OF CLASSES
## OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER
## THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan provides for the treatment of Creditors on the basis of the Debtor as follows:

**4.1** **Class I.** Class I shall consist of the holders of Allowed Unsecured Claims.

4.1.1 **Treatment of Allowed Unsecured Claims.** Each Holder of Class I Claims shall receive a Pro Rata distribution attributable to its Allowed General Unsecured Claim based on quarterly payments each year by the Debtor from the Debtor's Projected Disposable Income for a period of 5 years. The first payment shall be the first day of the month at the beginning of the second calendar quarter after the Effective Date. Such payments shall continue to be made quarterly on the first day of each calendar quarter thereafter for a period of 5 years from the first payment. Each quarterly payment shall total $1,234.87, to be divided Pro Rata.

At the end of each calendar year during the term of the Plan, the Debtor will determine if its actual net income[1] has exceeded the Projected Disposable Income for that calendar year. If the Debtor's actual net income has exceeded its Projected Disposable Income by $10,000.00 or more during the calendar year at issue, the Debtor will by February 1 of the following calendar year make an additional distribution of 50% of the excess amount, less $10,000.00, to the Holders of Allowed Unsecured Claims, with the distribution to be divided Pro Rata. The total amount of this additional distribution shall be calculated by subtracting $10,000.00 from the net amount earned by the Debtor in excess of its Projected Disposable Income during the calendar year at issue and reducing that amount by 50%. For example, if the Debtor earns $20,000.00 more than its Projected Disposable Income during a calendar year, the additional distribution for that year would be in the total amount of $5,000.00. The holders of Allowed Unsecured Claims would each receive their Pro Rata share of that total amount. For the avoidance of doubt, if the Debtor's actual net income does not exceed its Projected Disposable Income by $10,000.00 or more during a given calendar year there will be no additional distribution with respect to that calendar year.

In addition to the forgoing payments, if Avoidance Claims are successfully pursued by the Debtor, the Debtor will distribute 50% of the net proceeds obtained from Avoidance Claims, Pro Rata, to the Holders of Allowed Unsecured Claims. All costs and expenses of litigation shall be deducted first from the gross Avoidance Action proceeds in order to arrive at the net amount. Any required distribution of Avoidance Action proceeds shall be made within 60 days of the date upon which the Debtor collects the funds owed in connection with the Avoidance Action from the defendant or after expiration of any applicable appeal period, whichever comes later. If an appeal is filed, the Debtor

---

[1] For the avoidance of doubt, in addition to Debtor's other expenses, priority tax payments, secured debt payments, and other payments made pursuant to this Plan will be deducted from income when calculating the Debtor's net income.

19

shall hold any amounts recovered in escrow until the appellate proceedings have concluded. The Debtor shall be entitled to pay all of the costs and expenses associated with an appeal using any amounts held in escrow. The costs and expenses of any appeal shall also be deducted from the amount which would otherwise be distributed to creditors pursuant to this paragraph.

In addition to all of the foregoing, the Debtor believes that it may receive a tax refund in connection with an Employer Retention Tax Credit for a prior tax year (the "ERC Tax Credit"). The return for the ERC Tax Credit was prepared by Lasiter & Lasiter Inc., a tax firm in Indianapolis Indiana in exchange for the Debtor's agreement to pay a contingency fee of approximately $15,000.00. The amount the Debtor may receive after the payment of the fee is approximately $60,000.00. The Debtor is concerned that this tax refund may not be paid, which is why the expected refund was not included in the Debtor's projections. However, if the refund is in fact paid to the Debtor the Debtor will pay the contingency fee owed to Lasiter & Lasiter Inc. and then pay the remaining funds to Capital National Bank in full or partial satisfaction of the amounts that it may be owed under the Plan. After the claim of Capital National Bank has been satisfied, any amount of the Debtor's ERC Tax Credit refund which remains will be distributed pro-rata to the Holders of Allowed Unsecured Claims. For the avoidance of doubt, this provision of the Plan shall not apply to any similar credits which the Debtor may be entitled to in connection with Post-Petition tax years.

Class I also includes the amount of any tax claim that is not entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

### 4.1.2 **This Class is Impaired.**

**4.2** **Class II**. Class II shall consist of any Claim of Autolab Franchising, LLC against the Debtor.

### 4.2.1 **Treatment of the Autolab Franchising, LLC Claim.** Debtor intends to assume its executory contract with Auto-lab Franchising, LLC, or replace the contract with a similar agreement. Auto-lab Franchising, LLC may be the holder of a cure claim in an amount that is presently unknown to the Debtor. To the extent that Autolab Franchising, LLC asserts or has asserted any claim other than a cure claim which is determined to have priority status either by agreement or by Court order, said claim shall be treated as a Class I general unsecured claim as there are no unencumbered assets which could allow Autolab Franchising, LLC to successfully argue that its claim is secured. Autolab Franchising, LLC may file a Proof of Claim evidencing the amount it claims to be owed by the Debtor within 30 days of the Confirmation Date or on or before a different deadline should one be established by an order of the Court. To the extent that it is determined that Autolab Franchising, LLC has an Allowed Cure Claim, the Allowed Cure Claim shall be paid by the Debtor, without interest, in 60 equal monthly installments over the term of the Plan, or upon other terms which Autolab Franchising, LLC and the Debtor may agree to.

### 4.2.2 **This Class is Impaired.**

**4.3** **Class III.** This Class consists of the Claims of Capital National Bank, which holds a Secured Claim against the Debtor.

4.3.1 <u>**Treatment of the Claim of Capital National Bank**</u>. Capital National Bank shall receive a total of $90,000.00 in full satisfaction, settlement, release, and discharge of, and in exchange for, any Claims it has against the Debtor. No interest shall accrue on this amount. The amount owed to Capital National shall be paid in equal monthly installment payments beginning on the date which is 30 days after the Effective Date. The payment amount will be $1,500.00, which shall cause the Debtor's obligation to Capital National Bank to be fully satisfied during the term of the Plan.

In addition to the foregoing, the Debtor believes that it may receive a tax refund in connection with the ERC Tax Credit discussed above. The return for the ERC Tax Credit was prepared by Lasiter & Lasiter Inc., a tax firm in Indianapolis Indiana in exchange for the Debtor's agreement to pay a contingency fee of approximately $15,000.00. The amount the Debtor may receive after the payment of the fee is approximately $60,000.00. The Debtor is concerned that this tax refund may not be paid, which is why the expected refund was not included in the Debtor's projections. However, if the refund is in fact paid to the Debtor the Debtor will pay the contingency fee owed to Lasiter & Lasiter Inc. and then pay the remaining funds to Capital National Bank in full or partial satisfaction of the amounts that it may be owed under the Plan. After the claim of Capital National Bank has been satisfied, any amount of the Debtor's ERC Tax Credit refund which remains will be distributed as set forth above. For the avoidance of doubt, this provision of the Plan shall not apply to any similar credits which the Debtor may be entitled to in connection with Post-Petition tax years.

Capital National Bank shall retain its liens on the Debtor's property until its Claim is paid in full as provided in this paragraph. Upon receipt of payment in full as provided under this Plan, Capital National Bank shall take any action which may be required to release its liens against the Debtor. To the extent that Capital National Bank has asserted or asserts a Claim in excess of this amount, the excess claims shall be automatically disallowed on the Confirmation Date without any further action by the Debtor. For the avoidance of doubt, the Plan does not impact the rights Capitol National Bank may have with respect to third party guarantors of the debt owed by the Debtor to Capitol National Bank.

4.3.2 **This Class is Impaired**

**4.4** <u>**Class IV.**</u> This Class consists of the Claims of Cashable, LLC, Cloudfund, LLC, Ivy Receivables, LLC, Michigan Late Bloomers, Inc., and any other individual or Entity who may claim to be the Holder of a Secured Claim unless the individual or Entity is separately and specifically identified and treated as the holder of a Secured Claim in this Plan.

4.4.1 <u>**Treatment of Class V Claims**</u>. This class consists of the holders of Claims which purport to be secured whose claims are not actually secured. More specifically, the Debtor has defenses against the Claims in this class which include, without limitation 1) a defense based on the fact that a security interest was not properly perfected, 2) the relative priority of claimed security interests, 3) defenses based on the Holder's indication that its Claim is not a Secured Claim, but rather a purchase, and/or 4) a usury defense. As a result of the Debtor's defenses, these claims shall all be treated as Class I General Unsecured Claims. To the extent that the Holder of a Class IV claim has asserted or asserts a Secured Claim or any Claim other than a General Unsecured Claim, all parts of said Claim which are not General Unsecured Claims shall be automatically disallowed on the Confirmation Date without any further action by the Debtor.

4.4.2   **This Class is Impaired**

**4.5**      **Class V**: Class V consists of the Claims of Interest in the Debtor.

4.5.1   **Treatment of Claims.**  Holders of Allowed Interests shall retain their Allowed Interests in the Debtor and Reorganized Debtor.  No distribution will be made under the Plan on account of Allowed Interests.

4.5.2   **This Class is Unimpaired.**

# ARTICLE V
# EXECUTION AND IMPLEMENTATION OF THE PLAN

**Assumption of Liability**:

**5.1**      The Debtor shall be responsible for satisfying the Allowed Claims in accordance with the terms and provisions of this Plan.

**5.2**      The Reorganized Debtor will retain control of and be responsible for all of Debtor's activities pursuant to this Plan after the Effective Date. Funding for the administration of the bankruptcy estate and of this Plan and for the actions necessary shall come from funds on hand.

**5.3**      The Reorganized Debtor may pre-pay any Allowed Claim, other than Allowed Claims held by Insiders or Affiliates, at any time without penalty or liability for unmatured interest. The Reorganized Debtor may negotiate discounts in exchange for pre-payments. Upon payment by the Reorganized Debtor to any Allowed Claim Holder in the amounts required under this Plan or as otherwise agreed by the Allowed Claim Holder, the Reorganized Debtor will have no further obligation to the Allowed Claim Holder under this Plan, and the Allowed Claim Holder will have no further or continued rights or standing under this Plan.

**Voting and Acceptance of the Plan**

**5.4**      **Elimination of Vacant Classes.** Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily allowed by the Bankruptcy court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

**5.5**      **No Further Approvals.**  The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

**Post-Confirmation Professionals**:

**5.6**      **Retention.** The Reorganized Debtor may retain professionals after the Effective Date to represent and assist the Reorganized Debtor in all aspects of its obligations and rights under this

Plan or to otherwise assist the Reorganized Debtor. Without limitation, the Reorganized Debtor may retain professionals employed by the Debtor in the Chapter 11 Case.

**5.7    Professional Fees.** Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date will be Administrative Claims, will be paid by the Reorganized Debtor and will not be subject to the prior review and approval of the Bankruptcy Court, after twenty (20) days' notice to the Reorganized Debtor, c/o Bradford Brokaw. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Reorganized Debtor shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall review only that portion to which Reorganized Debtor or Bradford Brokaw objects. The Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

**5.8    <u>Effectuating Documents</u>**:  Bradford Brokaw, as the owner of the Reorganized Debtor, subject to the other terms of this Plan, shall be authorized as of the Effective Date to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate on behalf of the Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

**<u>Preservation of Rights of Action</u>**:

**5.9    Vesting of Causes of Action:** In accordance with Section 1123(b) of the Bankruptcy Code, all Causes of Action of the Debtor and the Debtor's Estate will be transferred to the Reorganized Debtor. The Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence, pursue, compromise and collect, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, Avoidance Claims.

**5.10    All Causes of Action are Specifically Reserved, whether or not specifically listed in the Plan:** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, Exhibit, or a Final Order, the Debtor specifically reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches will apply to any of the Causes of Action upon, after or as a consequence of the Confirmation, entry of the Confirmation Order or the Effective Date.

**5.11    Limited Modification of the Automatic Stay:** In order to allow these Causes of Action to be pursued, upon the Effective Date the Automatic Stay imposed by 11 U.S.C. § 362 shall be modified so that the Debtor is allowed to pursue the Causes of Action.

**<u>Termination of Subchapter V Trustee.</u>**

**5.12**    If the Plan is confirmed under Section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Section 1183 of the Bankruptcy Code through substantial consummation of the Plan, at which point his services shall terminate.

**5.13**    If the Plan is confirmed under Section 1191(b), the Debtor shall serve as the disbursing agent. The Subchapter V shall not hold, administer, or distribute funds to be paid under this Plan, notwithstanding Section 1194(b). The Subchapter V Trustee shall not be terminated until she has performed such duties as are described in Section 1183 of the Bankruptcy Code, and such other duties as he may have been assigned by the Bankruptcy Court prior to the Effective Date.

**Pre-Effective Date Injunctions or Stays**

**5.14**    All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**ARTICLE VI**
**EFFECT OF CONFIRMATION OF THE PLAN**
**ON CLAIMS AND INTERESTS**

**Discharge of Indebtedness.**

**6.1**    **Discharge Under §1191(a)**:  In the event this Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the confirmation of this Plan will, and does hereby act as a full, total and complete settlement, satisfaction, discharge and release of all Claims of all Creditors against the Debtor and the Reorganized Debtor. Confirmation will also act as an injunction against all Creditors from taking any actions to collect or enforce Claims against the Debtor or the Reorganized Debtor except as set forth in this Plan. Except as otherwise provided in the Plan or the Confirmation Order, Confirmation shall, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose before the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, and all debts of the kind specified in Sections 502(g), 502(h) or 501(i) of the Bankruptcy Code, in each case whether or not a Proof of Claim is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code.

**6.2**    **Discharge Under §1191(b):**  In the event this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion of Debtor's Payments due during the first five (5) years of the Plan, the Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(1)(A) and allowed under Section 503 of the Bankruptcy Code (the "Discharge Order"). Notwithstanding the foregoing, the court shall not grant the Debtor a discharge of any secured debt for which the last payment is due after the first five (5) years of the plan.

**6.3**    **Effect of Discharge.**  Upon the Effective Date, if the Plan is confirmed under Section 1191(a)  or upon entry of a Discharge Order if the Plan is confirmed under Section 1191(b), and except as otherwise provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor, or its respective successors or property, any other or

24

further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all such Claims and other debts, interests, and liabilities against the Debtor pursuant to Sections 524 and 1192 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged debt.

       **6.4**     **Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Persons and Entities that have held, currently hold, or may hold Claims, Interests, Causes of Action or liabilities that are treated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor and Reorganized Debtor or their property on account of any such discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (iii) creating, perfecting or enforcing any Lien or encumbrance based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to Debtor based upon said discharged Claims, debts, liabilities, or terminated Interests, Causes of Action, liabilities or rights; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is not consistent, with the provisions of this Plan.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTION

       **7.1**     **No Interest On Unsecured Claims**. Unless otherwise specifically provided for in this Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, interest will not accrue or be paid on any General Unsecured Claim.

       **7.2**     **Delivery Of Distributions in General**. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests will be made by Reorganized Debtor (a) at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests (or at the last known addresses of such Holders of Claims or Interests if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and Debtor has not received a written notice of a change of address. Distributions under the Plan on account of Allowed Claims will not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim will have and receive the benefit of the distributions in the manner set forth in the Plan.

       **7.3**     **Undeliverable Distributions and Non-Negotiated Checks.** If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Debtor is notified of the then-current address

of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of the check, the check will be null and void. Amounts of undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) when such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non- negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred from seeking payment, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein requires the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**7.4** **Fractional Payments.** Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars.

**7.5** **Restrictions on Distributions.** Notwithstanding anything in this Plan to the contrary, Debtor is not required to make any distribution to a Claim Holder in an amount less than $10.00. In the event a distribution is less than $10.00, such distribution(s) shall be held until the next scheduled distribution date, and paid with such following distribution.

## ARTICLE VIII
## OBJECTIONS TO CLAIMS

**8.1** **Timing of Objections:** The Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) three months from the date of filing of any Proof of Claim or (b) three months after the Effective Date.

**8.2** **Objections to Liens:** The Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 8.1 or after any attempt by a Creditor to enforce the Lien, except that Debtor may not file an objection to any Lien that is the basis of a specifically Claim Allowed under the terms of this Plan.

**8.3** **Claims Bar Date**: Except as provided herein or otherwise agreed by Debtor in writing, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date (or, for a Claims Bar Date after the Effective Date, as of the applicable Claims Bar Date) without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order. It is the responsibility of the Creditor holding any such late Claim to request that such late claim be held timely Filed.

**8.4** **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, neither the Debtor nor the Reorganized Debtor shall be obligated to make any payments toward the disputed portion of a Disputed Claim; provided, however, that the Debtor may, at its discretion, pay any undisputed portion of a Disputed Claim in accordance with the terms of the Plan. To the

26

extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any distribution withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

**8.5** **Distribution after Allowance.** To the extent that a Disputed Claim becomes an Allowed Claim, distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and the Confirmation Order. As soon as practicable after the date that an order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtor shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan under the terms set forth in the Plan.

**8.6** **Disallowed Claims.** Any Claim held by a Person or Entity against the Debtor that is a Defendant in a proceeding asserting a Cause of Action under Sections 542, 543, 544, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and the Holder of such Claim shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed shall continue to be disallowed for all purposes until such Cause of Action has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

## ARTICLE IX
## MODIFICATION OF THE PLAN

**9.1** **Modification of Plan**. Except as otherwise provided in this Plan, Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in Section 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan, Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, the Reorganized Debtor may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

**9.2** **Effect of Confirmation on Modifications**. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to Section 1193(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**9.3** **Revocation or Withdrawal of the Plan.** Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revokes or withdraws the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in

any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

## ARTICLE X
## EXECUTORY CONTRACTS

**10.1** **Assumption or Rejection of Executory Contracts and Unexpired Leases.** The Debtor previously 1) assumed the real property lease which allows it to retain possession of its operating location and 2) rejected an executory contract with Olympia Entertainment Events Center, LLC. For the purposes of the Plan the real property lease is thus considered assumed and the Olympia Entertainment Events Center, LLC is considered rejected. With respect to any other executory contracts or unexpired leases, unless rejected under this Plan or subject to a separate motion to assume or reject filed before the Confirmation Date, all executory contracts and unexpired leases of Debtor shall be deemed assumed as of the entry of the Confirmation Order.

**10.2** **Rejection Claims.** Any Creditor who has a Claim as a result of the rejection of a contract shall have until thirty (30) days after the Effective Date to file a Proof of Claim asserting the rejection damages relating to the contract, failing which such Claim will be disallowed in its entirety. Creditors whose contracts are assumed or rejected under a Court Order entered before the Effective Date are required to follow the procedures set forth in the Court Order if they differ from the procedures set forth above.

**10.3** **Objections to Rejection Claims and Cure Claims.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article VIII.

## ARTICLE XI
## TITLE TO PROPERTY

**11.1** **Revesting of Assets.** Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estate (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of Creditors, except for the retained Interests of equity security Holders. As of and following the Effective Date, the Reorganized Debtor, as provided for under the terms of this Plan, may conduct the Debtor's activities and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

**11.2** **Effect of Conversion**. In the event of a conversion of this case to a Chapter 7 proceeding, all property of the Debtor or Reorganized Debtor, including property which will revest in the Reorganized Debtor pursuant to Confirmation of this Plan and all property acquired by the Reorganized Debtor subsequent to Confirmation, shall be property of the Chapter 7 estate, subject to the Liens and security interests granted under this Plan.

## ARTICLE XII
## JURISDICTION OF THE COURT

28

**12.1** <u>Jurisdiction</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

12.1.1    The classification of the Claim of any Creditor and the re-examination of Claims Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim, in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest which secures such Claim, in whole or in part.

12.1.2    The determination of all questions and disputes regarding title to the assets of the Estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor any other party.

12.1.3    The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

12.1.4    The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

12.1.5    The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

12.1.6    The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor dispute all or a portion thereof.

12.1.7    Debtor's rights to pursue any Causes of Action or Avoidance Claims.

12.1.8    The entry of an order determining the validity of any Lien.

12.1.9    The entry of an order concluding and terminating this Case.

**12.2** <u>Standing</u>. Plan Beneficiaries have standing to enforce their rights under this Plan or to seek relief in the event that any Person or Entity fails to comply with their obligations under this Plan.

**ARTICLE XIII**
**<u>MISCELLANEOUS PROVISIONS</u>**

**13.1    Default.** Should a Beneficiary of this Plan believe that a default has occurred under the Plan as a result of Debtor's action or inaction, the Beneficiary shall send written notice of the alleged default to the Debtor. The Debtor shall have twenty-one (21) days from the date of receipt of any such written notice of default to cure the alleged default. If the alleged default is not so cured, the Beneficiary who provided the written notice may file an appropriate pleading with the Bankruptcy Court, including but not limited to a Motion to convert this case to a case under Chapter 7 of the United States Bankruptcy Code. The Court shall grant relief if cause is established and the Beneficiary demonstrates that an uncured default under the Plan exists.

**13.2    Immediate Binding Effect**.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

**13.3    Additional Documents**.   On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.4    Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any of the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**13.5    Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

**13.6    Service of Documents.**   After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or the Reorganized Debtor must be sent by overnight mail, postage prepaid to:


Bradford Brokaw
16500 Silver Pkwy, Suite C,
Fenton, MI 48430

**13.7    Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.8** **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) nonseverable and mutually dependent.

**13.9** **Closing of Chapter 11 Case**. Debtor shall, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court, all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**13.10** **Waiver or Estoppel**. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with Debtor, its counsel, or any other Person, if such agreement was not disclosed in the Plan or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**13.11** **Conflicts and Interpretation of the Plan**. Except as set forth in the Plan, to the extent that any provision of any order (other than the Confirmation Order) referenced in the Plan or any Exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, conflict with or are in any way inconsistent with any provision of the Plan, the Plan will govern and control.

**13.12** **Termination of Liens and Encumbrances**. Debtor and all parties-in-interest, including any Creditor, must execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This includes the execution by Creditors of any Uniform Commercial Code termination statement.

**13.13** **Causes of Action; Standing**. Except as otherwise provided in this Plan, Reorganized Debtor has the right and authority to commence, continue, amend or compromise all Causes of Action available to Reorganized Debtor, the Estate or the debtor-in-possession, including without limitation all Avoidance Claims whether or not those Causes of Action or Avoidance Claims were the subject of a suit as of the Confirmation Date.

THIS SPACE IS INTENTIONALLY LEFT BLANK

Submitted by:

Empower Central Michigan, Inc.
Debtor

_/s/_     _Bradford Brokaw_____
By:     Bradford Brokaw
Its:     President / Sole Shareholder

Prepared by:

Winegarden, Haley, Lindholm, Tucker & Himelhoch, P.L.C.

By: _/s/ Zachary R. Tucker_____
Zachary R. Tucker (P75263)
9460 S. Saginaw Rd, Suite A
Grand Blanc, MI 48439
(810) 579-3600
ztucker@winegarden-law.com

Dated: July 12, 2024